## HUMES v. UNITED STATES.
### No. 4123.

United States Court of Appeals
Tenth Circuit.
Jan. 29, 1951.

1. Barrett v. Hunter, 10 Cir., 180 F.2d 510, 516.

876

Stevens Park Kinney, Denver, Colo., for appellant.

Joseph N. Lilly, Asst. U. S. Atty., Denver, Colo. (Max M. Bulkeley, U. S. Atty., Denver, Colo., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

PHILLIPS, Chief Judge.

Humes was tried and convicted upon an information which charged that on March 17, 1949, in the District of Colorado, he made and presented to the Veterans Administration of the United States a subsistence allowance claim in which he set forth the following false and fraudulent statements: "That he had a child named Grace Soares Humes, born December 24, 1945, at Recife, Brazil, and that said child was living with its mother in Brazil at an address unknown" to Humes and that Humes knew such statements were false and fraudulent.[1]

On January 10, 1935, Gercina Soares was married to Mario Calvalcante, at Recife, Brazil. One child was born of that marriage. Gercina separated from Mario. Thereafter, in 1942, Humes, while in the United States Army and stationed at Recife, Brazil,. met Gercina, and they lived together as man and wife for one year and nine months. In 1944, at Recife, a marriage ceremony, purporting to unite Humes and Gercina in marriage, was performed. At that time Humes did not know of Gercina's previous marriage. In July, 1944, Humes and Gercina removed to San Antonio, Texas, where they resided for a year. In July, 1945, they removed to Denver, Colorado, and lived together as man and wife at 630 East 17th Avenue. On January 22, 1948, Gercina gave birth to a son at Recife, Brazil. Humes was its father. Gercina was employed continuously at the George Prior Company in Denver, from August, 1945, to March, 1946. Later in 1946 she returned to Brazil. She was also in Brazil when her son was born in 1948. While she was in Brazil, at the request of Humes, she obtained two false birth certificates, certifying the birth to Humes and Gercina of a son named Frank William Humes, Jr., born January 5, 1945, and a daughter, named Grace Soares Humes, born December 24, 1945. After the return of Gercina to the United States, Humes took such false certificates from her baggage.

On December 17, 1948, Humes obtained a judgment in the District Court for the City and County of Denver, Colorado, annulling the purported marriage between himself and Gercina.

At the trial Gercina testified that she gave birth to no children in 1945, and that the only child born to her after her purported marriage to Humes was a son born January 22, 1948.

On cross-examination she was asked if she had written to Humes that a child was born to her while she was in Brazil, which she named Grace Soares Humes. She denied writing such letter, but stated that she did write some letters about a doll baby which she named Grace and he might have understood her to refer to a baby.

Humes testified that he heard Gercina testify she might have written him some letters in which she talked about a baby

1. The information charged a violation of 18 U.S.C.A. § 287.

doll, and that he received several such letters. He identified a letter written by Gercina in English, marked Exhibit H, and he testified he received it in 1946 or 1947. Such letter, in part, read: "If I did not Grace with me with her blond hair like you were, I was crazy about. but Laurinda she wants care her all the time and I don't have her to play."

Humes also identified a letter written by Gercina in Portuguese, marked Exhibit C, and testified he received it in 1946 or 1947. Humes translated a part of the letter as follows: "It was the greatest difficulty that I changed the American Travelers Checks for, as they did not understand, I guess, how to do it. It wasn't enough money. Send more because want to buy a dress for Grace that she soiled. * * * If it is a good day Sunday I will make pictures with Grace for you to see how she will be. Will be pretty with the new dress mother is making."

On cross-examination Humes was handed the Government's Exhibit 19. He admitted that it was in his handwriting and that it stated: "Grace needs money. Please send any if you have. * * * Laurinda is happy with Grace. Would like to stay with her. What do you think?"

He denied that in January, 1950, he went to Gercina's apartment and requested her to write certain letters using the phraseology of Exhibit 19. He further denied that he threatened to have her deported and twisted her arm in an effort to coerce her into writing such letters, and he denied that the letter marked Exhibit H, and the letter marked Exhibit C were written by Gercina at his request in January, 1950. The Government produced a notebook marked Exhibit 20. Humes admitted that the notebook belonged to him, that he had had it in Brazil, and that the paper on which Exhibit C was written was the same as the paper in the notebook and appeared to have been torn out of the notebook. Humes denied that he discussed with Gercina how writing could be made to look old by the use of lemon juice.

After the defense had rested, Gercina was recalled. She testified she had made false statements in her previous testimony and that she desired to correct them by telling the truth. Over the objection that it was improper rebuttal, she was permitted to testify that Humes came to her apartment in January, 1950, and requested her to write letters using the word "Grace" to give the impression that she had a child by that name. She identified Exhibit 19 and testified that Humes wrote that exhibit and brought it to her as a suggestion of phraseology to use in such letters; that she first refused to write such letters, but that Humes told her if she did not write the letters he would have her deported and take her boy away from her, and that she finally consented to write the letters; that he requested her to write one letter in Portuguese and one in English; that she first wrote the letters in ink, but the ink appeared fresh, and that they undertook to make the ink look old by using lemon juice and flour; that the effort to disguise the age of the letters was not successful, and that Humes then requested her to write the letters in pencil; that she wrote Exhibit C in Portuguese on paper that Humes tore out of the notebook, Exhibit 20; that the notebook was in a drawer in her apartment, and that she wrote Exhibit H on paper which he gave her from a box of paper, and that she gave the letters to Humes. Gercina also produced a sack containing pieces of lemons and flour, which she said was used to attempt to disguise the age of the letter written in ink.

■ Humes urges that the testimony of Gercina, adduced when she was recalled as a witness, was improper rebuttal. In support of his defense that he honestly believed a daughter named Grace, of whom he was the father, had been born to Gercina in Brazil, in December, 1945, Humes identified Exhibits H and C and testified that they were written by Gercina and that he received them in 1946 or 1947. The testimony of Gercina, when she was recalled, was properly admitted in rebuttal to disprove the testimony of Humes with respect to Exhibits H and C. Moreover, it was admissible to impeach the testimony of Humes with respect to Exhibits H and C, since a proper foundation

for such impeachment had been laid in the cross-examination of Humes, and the evidence was directly relevant to an issue in the case and did not relate to a collateral matter.[2]

Humes further urges that the United States, when it recalled Gercina, sought to impeach its own witness. Gercina was recalled at her own request in order that she might correct false testimony she had theretofore given and testify to the truth. The object of a trial with respect to issues of fact is to ascertain the truth. It is true that a witness who has committed wilful perjury in violation of 18 U.S.C.A. § 1621 cannot purge himself of the offense by voluntarily retaking the witness stand and recanting the false testimony,[3] and testifying to what the witness asserts are the true facts. Nevertheless, it is a matter resting in the discretion of the trial judge as to whether he will permit a witness for the Government, even after the defendant has rested, to resume the witness stand to correct false testimony theretofore given and testify as to what the witness then asserts is the truth, and we think the trial court should permit a witness so to correct his former testimony where, as here, the surrounding facts and circumstances tended to establish that the previous testimony was false and the testimony given by the witness, when recalled, was the truth. To hold otherwise would be to close the door to the truth. To permit a witness to admit he testified falsely and to correct his previous false statements is not the impeachment of the witness by the party who called him, but is voluntary recantation by the witness, permitted by the court in the exercise of a sound discretion.

The order of proof is a matter resting in the discretion of the trial court.

Humes had already denied substantially all that Gercina testified to when recalled as a witness. Having failed to request the court for time to secure and leave to introduce further evidence, after Gercina testified in rebuttal, he may not now claim prejudice by surprise.

The trial court did not err in peremptorily denying Humes' oral application for probation. The granting or denying of probation is a matter resting in the discretion of the sentencing court and the exercise of that discretion cannot be questioned on appeal, except for arbitrary or capricious action amounting to a gross abuse of discretion.[4]

It was entirely proper for the court in imposing sentence on Humes to consider the character of Humes as shown by the fact that he committed perjury and induced Gercina to commit perjury. Certainly, the attitude of a convicted defendant with respect to his willingness to commit a serious crime and to induce another to commit a like crime is a proper matter to consider in determining what sentence shall be imposed within the limitations fixed by statute.

The sentencing court did not err in imposing sentence before the five-day period for filing a motion for a new trial had lapsed. Before imposing sentence, the following colloquy occurred between the court and Humes:

"The Court: * * * Do you know of any reason why the Court shouldn't impose sentence at this time? Have you anything to say?

"Mr. Humes: No, sir.

"The Court: Nothing at all?

"Mr. Humes: No, sir."

If Humes desired to file a motion for a new trial, he should have said so at the

2. Nye & Nissen v. United States, 9 Cir., 168 F.2d 846, 855, 856; United States v. Bowcott, 7 Cir., 170 F.2d 173, 176, 177; 58 Am.Jur., Witnesses, § 784, p. 433.

3. United States v. Norris, 300 U.S. 564, 57 S.Ct. 535, 81 L.Ed. 808; Seymour v. United States, 8 Cir., 77 F.2d 577, 581, 582, 99 A.L.R. 880; Note, 99 A.L.R. 890.

Contra, see People v. Gillette, 126 App. Div. 665, 111 N.Y.S. 133, 139; People v. Brill, 100 Misc. 92, 165 N.Y.S. 65, 71; Brannen v. State, 94 Fla. 656, 114 So. 429, 431.

4. Elder v. United States, 9 Cir., 142 F.2d 199, 201; United States v. White, 3 Cir., 147 F.2d 603; Evans v. District Judge, 6 Cir., 12 F.2d 64, 65.

time of such colloquy. The court could have vacated the sentence, in order to permit a motion for a new trial to be filed and considered.[5] But counsel for Humes wholly failed to request the court so to do.

We conclude that the record fails to disclose any prejudicial error and that the evidence fully supported the verdict of guilt.

Affirmed.

5. Oxman v. United States, 8 Cir., 148 F.2d 750, 752, 753.