**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Jack NUNN, Defendant-Appellant.**

**No. 75–1544.**

United States Court of Appeals, Fifth Circuit.

Jan. 7, 1976.

Rehearing and Rehearing En Banc Denied March 5, 1976. See 527 F.2d 1390.

Gerald H. Goldstein, Ernest J. Altgelt, III, San Antonio, Tex., for defendant-appellant.

John E. Clark, U. S. Atty., W. Ray Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, RIVES and GEE, Circuit Judges.

GEE, Circuit Judge:

This appeal from convictions of conspiracy to transport illegal aliens and transportation of illegal aliens challenges the legality of the search and seizure of defendant's vehicle, the district court's lengthy explanation of perjury laws to a government witness, and the court's consideration of its belief that defendant had committed perjury as a factor in determining the sentence. We affirm.

*Illegal Search and Seizure*

An anonymous caller told an Immigration and Naturalization Service agent that six aliens were lying in the open bed of a two-tone, late model Ford pickup driven by two black men north on a certain highway. A police officer who heard this description on a radio broadcast stopped a three-tone pickup driven by two blacks on that highway. Approaching the vehicle, he saw the aliens lying in back. Defendant contends that the alien witnesses' testimony, as the fruit of an illegal search and seizure, should have been suppressed. But in this circuit, an individual has standing to challenge a government search and seizure only if he has a "reasonable expectation of privacy" that is violated by the intrusion. *United States v. Hunt,* 505 F.2d 931, 938–41 (5th Cir. 1974); *cf. United States v. Novello,* 519 F.2d 1078 (5th Cir. 1975). Ownership of the seized property is relevant in assessing defendant's privacy expectation but not necessarily determinative. Here defendant owned the truck, but was not driving when it was seized.[1] The aliens were lying in the truck's open bed, and defendant cannot now claim any reasonable expectation of privacy in such circumstances.[2]

1. Which occurred when the officer signalled it to stop.

2. Even someone with standing would probably not succeed in challenging this search and seizure. Whether or not the officer had probable cause to seize the car, he most likely had at least the "reasonable suspicion" necessary to make a brief investigative stop, *see United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607, 616–17 (1975); *United States v. Rollerson,* 491 F.2d 1209, 1211 (5th Cir. 1974); *United States v. Moreno,* 475 F.2d 44, 50 (5th Cir. 1973); *United States v. McCann,* 465 F.2d 147, 157–58 (5th Cir. 1975), and there was no danger of arbitrary action here. Having properly stopped the car, the officer could then seize the passengers, who were in "plain view," *see Harris v. United States,* 390 U.S. 234, 88 S.Ct.

*Explanation of Perjury Laws to the Witness*

When a government witness, contrary to government expectations, denied attending a meeting at which defendant allegedly hired the drivers, the defense announced it had a statement in which the witness swore to the same thing. The judge excused the jury and read and explained in detail the perjury laws,[3] after which the witness changed his testimony. But defendant's contention that this admonition deprived him of due process is groundless because, unlike *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (per curiam), the judge did not use "unnecessarily strong terms [that could] have exerted such duress on the witness's mind as to preclude him from making a free and voluntary choice whether or not to testify." *Id.* at 98, 93 S.Ct. at 353.

*Perjury as a Factor in Assessing Sentence*

The judge assessed defendant's sentence after saying that he was considering as a factor in determining length of sentence his belief that defendant had perjured himself during the trial. Defendant argues that consideration of perjury in sentencing represents a kind of conviction for another crime without normal procedural safeguards. Two circuits agree with defendant,[4] but six disagree.[5] We now choose to follow the latter line of cases because we agree with Judge Frankel that appellant's argument

> ignores the nature of the sentencing process as it exists in our system and of the factors the trial judge may consider in exercising a frequently enormous range of discretion. If there is no clear consensus on these factors, it is certainly clear that they include, as aggravating circumstances, conduct that is not literally "criminal," or at least has not been duly adjudged criminal in the case in which sentence is being imposed.

* * * * * *

992, 19 L.Ed.2d 1067 (1968), and possessed several characteristics that made the officer suspect they were illegal aliens.

3. The following exchange occurred:

THE COURT: Just a moment. Mr. Cook, you are under oath, you understand that?

THE WITNESS: Yes, sir.

THE COURT: And you have sworn to tell the truth and nothing but the truth so help you God, you understand that?

THE WITNESS: Yes, sir.

THE COURT: Now, have you ever heard of perjury, the offense of perjury?

THE WITNESS: I know what's going on if—

THE COURT: Have you ever heard of such a crime as committing perjury?

THE WITNESS: No, sir.

THE COURT: You don't know what perjury is?

(Witness shakes his head negatively.)

THE COURT: I'll read you the statute. [Perjury statute is read.]

In other words, anyone that's sworn to tell the truth and then wilfully and contrary to the oath testified falsely as to any material matter is guilty of perjury and is subject—upon being convicted, of being fined up to two thousand dollars or imprisoned not more than five years or both. Do you understand that now?

THE WITNESS: Yes, sir.

THE COURT: Now, we have another statute here that I might as well read to you—two more. [Text of statutes concerning suborning perjury and knowingly making false declarations are read.]

You feel you understand these offenses that I have described to you here?

(Witness nods his head affirmatively.)

THE COURT: All right. Now you answer these questions truthfully that they are asking you, please. Proceed.

MR. GOLDSTEIN: May the record reflect our objection, Your Honor?

THE COURT: All right, make your objection.

[Attorney objects.]

THE COURT: That's enough for me to tell this witness, when you tell me it's exactly contrary to what the Government has, it's time somebody told this man about perjury if you've got two things signed by the man that speak opposite. I don't want him to unwittingly commit perjury here if he doesn't know what perjury is, so I have read him the statutes on the matter. Your objection is overruled. I don't care to argue about it.

4. *Poteet v. Fauver,* 517 F.2d 393 (3d Cir. 1975); *Scott v. United States,* 135 U.S.App.D.C. 377, 419 F.2d 264 (1969).

5. *United States v. Hendrix,* 505 F.2d 1233 (2d Cir. 1974) and cases cited, *id.* at 1236.

> The effort to appraise "character" is, to be sure, a parlous one, and not necessarily an enterprise for which judges are notably equipped by prior training. Yet it is in our existing scheme of sentencing one clue to the rational exercise of discretion. If the notion of "repentance" is out of fashion today, the fact remains that a manipulative defiance of the law is not a cheerful datum for the prognosis a sentencing judge undertakes. . . . Impressions about the individual being sentenced . . . are, for better or worse, central factors to be appraised under our theory of "individualized" sentencing. The theory has its critics. While it lasts, however, a fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia.

*United States v. Hendrix,* 505 F.2d 1233, 1235–36 (2d Cir. 1974).

Affirmed.

RIVES, Circuit Judge (specially concurring):

I think that Nunn did have standing to contest the seizure of his pickup truck. The government so conceded on the hearing of the motion to suppress (Appendix pp. 94–95), and I think properly so. The government further conceded on the hearing of the motion to suppress that the seizure occurred when the officer signaled for the truck to stop (Appendix p. 41). Footnote 1 to the majority opinion is in accord with that concession. I cannot justify an actual seizure on a mere anonymous tip. I reach the same result, however, under all of the circumstances of this case by holding the stop of the truck to be a mere brief investigative stop under the authorities cited in Footnote 2 to the majority opinion. On that ground I concur in the judgment of affirmance.