UNITED STATES of America

v.

GRAYSON, Ted R., Appellant.

No. 76–1646.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 9, 1976.

Decided Sept. 16, 1976.

Submitted for Rehearing Under Third Circuit Rule 12(6) Oct. 15, 1976.

As Amended Jan. 7, 1977.

---

S. John Cottone, U. S. Atty., Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for appellee.

John M. Humphrey, Williamsport, Pa., for appellant.

Before ADAMS, ROSENN and GARTH, Circuit Judges.

## OPINION SUR PANEL REHEARING

GARTH, Circuit Judge.

On October 11, 1975, the appellant, Ted R. Grayson, without authority left the Allenwood Federal Prison camp, where he had been serving a three-year sentence for a controlled substances conviction. Two days later, he was apprehended in New York City.

Indicted for this escape pursuant to 18 U.S.C. § 751(a),[1] Grayson was tried before a jury in the United States District Court for the Middle District of Pennsylvania. His sole defense was duress—that he had been forced to flee from Allenwood because of threats on his life made by inmates to whom he owed gambling debts. The jury, evidently disbelieving Grayson, rejected this defense and found Grayson guilty.

The district court sentenced Grayson to a two-year term of imprisonment which was to commence at the conclusion of the sentence that he was then serving. Prior to the actual sentencing, the district court had expressed its belief that Grayson had lied while testifying at trial.[2] Thereafter, in imposing sentence the court quite properly noted that it could, without giving any explanation, sentence Grayson to the maximum term of imprisonment provided by the statute, that is, a five-year prison term, see note 1 supra. See Dorszynski v. United States, 418 U.S. 424, 431, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); Government of Virgin Islands v. Richardson, 498 F.2d 892, 894 (3d Cir. 1974). Nevertheless, the district court proceeded to identify those factors which it had considered in arriving at the two-year sentence and expressly invited appellate review of its action. The district court's comments were as follows:

"The Court: All right. I'm going to give my reasons for sentencing in this case with clarity, because one of the reasons may well be considered by a Court of Appeals to be impermissible; and although I could come into this Court Room and sentence this Defendant to a five-year prison term without any explanation at all; I think it is fair that I give the reasons so that if the Court of Appeals feels that one of the reasons which I am about to enunciate is an improper consideration for a trial judge, then the Court will be in a position to reverse this Court and send the case back for re-sentencing.

In my view a prison sentence is indicated, and the sentence that the Court is going to impose is to deter you, Mr. Gray-

---

1. Section 751(a) provides:
   § 751. Prisoners in custody of institution or officer
   (a) Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.

2. In its order of April 30, 1976 denying Grayson's motion for a new trial, the court had stated: "Grayson's story was a total fabrication and had no semblance of plausibility." App. at 47.

son, and others who are similarly situated. Secondly, it is my view that your defense was a complete fabrication without the slightest merit whatsoever. I feel it is proper for me to consider that fact in the sentencing, and I will do so."

App. at 40.

Grayson advanced three contentions in his direct appeal to this Court, the first two of which we have found to be without merit.[3] Only his final argument concerns us here. Grayson argues that the district court judge erred by imposing a sentence "the severity of which was based in part upon the judge's belief that the defendant had committed perjury during the trial." Disagreeing with that claim and satisfied that Grayson's other two contentions should be rejected, we affirmed the judgment of the district court by a judgment order dated September 16, 1976.

Thereafter, Grayson filed a petition for rehearing. The thrust of the petition was that we had failed to follow a prior precedent in this Circuit, *Poteet v. Fauver*, 517 F.2d 393 (3d Cir. 1975). In *Poteet*, this Court had adopted the following principle of law:

A defendant has a right to defend, and although he is not privileged to commit perjury in that defense, the sentencing judge may not add a penalty because he believes the defendant lied. One reason is evident. A man may not be punished except upon a charge and opportunity for hearing. There having been no charge of perjury or conviction for that crime, due

process would be denied if further punishment were inflicted for that crime. Another reason, apart from this procedural obstacle, is that the right to defend would be unduly burdened if a defendant understood that, if convicted, his mere denial of the charge under oath would without more lead to successive convictions for perjury until he or the State was exhausted.

517 F.2d at 395, *quoting State v. Poteet*, 61 N.J. 493, 495–96, 295 A.2d 857, 858 (1972).

Upon reviewing the petition for rehearing, we, rather than the Court in banc,[4] reconsidered our prior determination and vacated the judgment order. We conclude that the controlling law in this Circuit on this question is found in *Poteet v. Fauver*, *supra*.

## I.

Our initial examination of *Poteet* when it was cited as grounds for reversal in Grayson's brief on appeal had persuaded us that *Poteet* did not control the disposition of this issue. *Poteet*, which accepted the legal doctrines formulated by the New Jersey Supreme Court but held that they had been applied incorrectly, presented much more egregious circumstances than are found here. In *Poteet*, the State trial judge was unsuccessful in his attempt to force Poteet to admit his guilt after the verdict and after a co-defendant had been forced to "confess." The trial judge then added ten years to Poteet's sentence because of his failure to "confess." This factual setting

3. Grayson's first contention was that the district court had erred in failing to ask his voir dire question "Would you be more likely to find the defendant guilty merely because he has previously been convicted of a crime?" His second claim was that the court had erred in permitting the introduction of evidence of his prior convictions for the purpose of impeaching his credibility.

4. This Court's Internal Operating Procedure 0.2. reads as follows:
   0. In Banc Hearing or Rehearing
      1. . . .
      2. *Rehearing In Banc after Decision.* Where a petition for rehearing before the panel or in banc has been filed by a party as provided by F.R.A.P. 35(b) or 40(a), unless

the petition for panel rehearing under 40(a) states explicitly it does not request in banc rehearing under 35(b), it is presumed that each rehearing petition requests both panel rehearing and rehearing in banc.
   a. *Panel Rehearing.* Each member of the panel concurring in the majority has the right to require rehearing before the panel. Thus, a senior judge of this Court or a justice or a visiting circuit or district judge sitting by designation who was a concurring member of the panel has the right to require rehearing before the panel.
See also Notes on F.R.App.P. 35, Advisory Committee on Appellate Rules; Third Circuit IOP 0.3.b.

differs dramatically from that which confronted the district court judge in Grayson's case. Despite our initial belief that *Poteet* did not appear to control the result in *Grayson* because of its different factual setting, nevertheless when we reexamined *Poteet* we could not fairly deny that this Circuit had committed itself to the principle quoted above, *i. e.*, that "the sentencing judge may not add a penalty because he believes that the defendant lied."

The reading given *Poteet* by the dissent is substantially different than our reading. The dissent claims that

> [t]he sentencing judge in *Poteet* . . . would have effectively required the defendant to waive his Fifth Amendment rights. Although certain language in *Poteet* suggests that a sentencing judge may not add an increment to a sentence in the belief that the defendant lied under oath on the witness stand, no such situation was presented in *Poteet*. I must therefore conclude that it was the trial judge's disregard of Poteet's Fifth Amendment rights which animated this court in that case.

Dissenting Op. at 110. Additionally, the dissent reads *Poteet* as pertaining only to post-verdict conduct as opposed to perjury committed at any time during trial. *Id.* at 110. Neither the text of *Poteet* nor the inarticulated premises of *Poteet* support such a strained reading.

Nowhere in the *Poteet* opinion does the Court address the Fifth Amendment concern which Judge Rosenn in dissent would regard as the basis for the *Poteet* court's holding. It impresses us that when the author of *Poteet* (Judge Aldisert) desired to confront Fifth Amendment considerations in the sentencing process in *United States v. Garcia*, 544 F.2d 681 (3d Cir. 1976), he did not disguise his intent or leave it to implication. Rather, his discussion of Fifth Amendment considerations leading to the Court's holding in *Garcia* was explicit, undisguised and unequivocal.[5]

We are certain that had the Fifth Amendment considerations attributed to the *Poteet* court by Judge Rosenn actually been involved in Poteet, the same explicit, undisguised, and unequivocal analysis found in *United States v. Garcia, supra,* would have been set forth in *Poteet*. Hence we cannot agree that the governing principle of *Poteet* and its result were the product of this Court's Fifth Amendment concerns. Nor can we agree, in interpreting *Poteet*, that what we consider to be its controlling principle, is "by definition, only dictum." *See* Dissenting Op. at 110.

*Poteet* prohibits a trial judge from increasing a defendant's sentence because the judge is convinced that the defendant has lied while before him. Although the colloquy between the judge and the defendant that took place in *Poteet* occurred during sentencing, it resulted from Poteet's defense at trial, on which the sentencing judge focused.

---

5. In *Garcia, Poteet* is distinguished, the Court stating:

> "No suggestion is made here that the court included in the sentences an increment for an offense other than that to which Antonmarchi and Garcia pleaded guilty."

*United States v. Garcia, supra*, at 683.

*Garcia* involved a plea agreement under which the defendants pleaded guilty to one count of possession with intent to distribute cocaine. The district court refused to extend lenity in its sentence, because the defendants had refused to assist in investigations of illicit narcotics traffic. In vacating the sentences and remanding for resentencing, this Court recognized the Fifth Amendment problem by stating:

> "In order to obtain lenity on a sentence for a guilty plea in which each had admitted guilt to a narrow compass of facts, then, appellants were in effect coerced to furnish the prosecutor with factual information of a broader and potentially unlimited factual scope. And they were required to disgorge this information without any assurance of immunity from future federal or state prosecutions resulting from the information supplied by them."

*Id.* at 685. Whereas the defendants in *Garcia* ran the risk of additional prosecution as a consequence of divulging the information sought by the district court, in *Poteet* there was no such risk, for the trial court in *Poteet* sought only Poteet's confirmation of the *very activity* for which he was convicted.

The state sentencing judge, prior to sentencing Poteet, referred to Poteet's trial defense as "an outrage" and to Poteet as "a liar", 517 F.2d at 395:

When [Poteet] tells me he wasn't there, he's a liar, right? I'm listening. You heard him. He said he didn't do it. The jury made a mistake. Didn't you hear him, didn't you?

The entire basis for the state judge's remarks at sentencing was the testimony given at trial that Poteet, although found in the getaway car, persistently claimed that he was "a hitchhiker to whom the codefendants had happened to give a ride." 517 F.2d at 394. It was this "hitchhiker" versus "robber" status that was discussed at length during the state sentencing procedure. Hence, we cannot consider as dictum this Court's holding in *Poteet v. Fauver,* which was summarized by Judge Aldisert, the author of that opinion, as:

Considering the totality of the sentencing judge's comments to Borowski and Poteet, we are not convinced that an increment of prison time was not added to Poteet's sentence because he persisted in maintaining his innocence after the jury had returned a guilty verdict. We conclude that this contravened fundamental principles so ably and accurately capsulated by Chief Justice Weintraub:

There having been no charge of perjury or conviction for that crime, due process would be denied if further punishment were inflicted for that crime.

*Id.* at 398, *quoting* 61 N.J. at 495–96, 295 A.2d at 858.

In view of that holding, and despite any other sentencing concepts to which we might otherwise be attracted, we are controlled here by the principles announced in, and the holding of, the *Poteet* decision.

We are aware of differing views as to what might, or might not, constitute appropriate considerations and standards for sentencing in this context, *see, e. g., United States v. Nunn,* 525 F.2d 958, 960–61 (5th Cir. 1976); *United States v. Hendrix,* 505 F.2d 1233, 1234–37 (2d Cir. 1974), *cert. denied,* 423 U.S. 897, 96 S.Ct. 199, 46 L.Ed.2d 130 (1975); *Commonwealth v. Murray,* Mass.App., 351 N.E.2d 555 (1976). *See also* the opinions of Judge Adams, concurring, and Judge Rosenn, dissenting, *infra.*[6] Until such time, however, as this Court in banc has renounced the doctrine of *Poteet,* we, as a panel of this Court, are bound to give it effect.[7] So, too, is the district court.

## II.

It is no answer to interpret the comment of the district court judge who sentenced Grayson as a wholly gratuitous observation. To us, it is obvious that the district court judge intended to, and did, add an increment to the sentence he might otherwise have imposed on Grayson.

The district court judge had commendably recognized that articulating the basis for his sentence might very well implicate *Poteet* and the principles established therein. It was for that reason that he invited this Court to focus its attention on the reason for the sentence imposed. He fairly stated that he could have imposed the maximum prison term without any explanation. Such is the law in this Circuit. *See United States v. Lee,* 532 F.2d 911, 916 (3d Cir. 1976), *Government of Virgin Islands v. Richardson, supra.* He also observed that

---

**6.** As the author of this majority opinion, I believe that the only questions before us are (1) whether or not *Poteet* proscribes an enhanced sentence for lying and, if it does, (2) whether we must follow our earlier decision in that case. Having answered both of these questions affirmatively, I find no need to address the overall reach of sentencing considerations which my brothers, Judges Adams and Rosenn, discuss. Inasmuch as I regard this panel as bound by *Poteet,* I resist the temptation of joining their discussion.

**7.** Third Circuit Internal Operating Procedure M. 2. reads as follows:

2. *Avoiding Intra-Circuit Conflict.* It is the tradition of this Court that internal stability of its panel decisions be preserved. To avoid conflicts in panel decisions no subsequent panel may overrule a published opinion of a previous panel. Court in banc consideration is required to overrule a previous decision of this Court.

his reason for imposing the sentence might be deemed to be improper, and if that were the case then this Court would be in a position to reverse his judgment. Finally, he stated: "It is my view that your [Grayson's] defense was a complete fabrication without the slightest merit whatsoever. I feel it is proper for me to consider that fact in the sentencing and I will do so." App. at 40.

As we have previously stated, *Poteet* mandates that no additional penalty may be imposed upon a defendant because the trial judge believes that the defendant lied while testifying. Here, Grayson's sentence was unquestionably increased for just this reason. His sentence, therefore, cannot stand.[8]

### III.

We will reverse and remand to the district court with directions that Grayson's sentence be vacated and that he be resentenced by the district court without consideration of his alleged false testimony given at trial.

ADAMS, Circuit Judge, concurring.

I concur in the result reached by Judge Garth, but because of the nature of the problem presented by this appeal consider it appropriate to add the following brief observations.

Although, as Judge Rosenn notes, *Poteet v. Fauver*[1] arose out of a factual configuration markedly different from the one now before us, I am persuaded that its language and holding inveigh against the practice of augmenting a sentence on account of a trial judge's belief that a defendant uttered false testimony.

Even if it were to be concluded that *Poteet* does not control the present case, I would have serious misgivings about the propriety of the sentencing procedure employed by the trial judge here. Such a practice, in my opinion, raises substantial constitutional questions in that it arguably trenches upon a defendant's constitutional privilege to testify in his own behalf[2] as well as his right to have criminal charges adjudicated pursuant to procedures required by due process. If a trial judge increases a sentence because he is of the belief that a defendant's testimony is untruthful, such an action could be interpreted as penalizing the defendant for exercising his constitutional right to take the stand. In addition, this practice could have the impermissible effect of deterring future defendants from testifying in their own behalf. Also, the defendant is, in effect, being punished for perjury, a separate offense that can be the subject of a criminal prosecution.

Judge Rosenn's dissent maintains that any constitutional challenges to the sentencing procedure under attack here have been foreclosed by the opinions of the Supreme Court in *Williams v. New York*[3] and of this Court in *United States v. Metz*.[4] I respectfully cannot agree. Neither *Williams* nor *Metz* dealt with the specific problem that now confronts us. The facts of those cases did not present the two constitutional infirmities that are arguably inherent in the sentence augmentation procedure at issue in this appeal. Nor do I find that the language of those opinions precludes a full consideration of these constitutional questions. Finally, it should be borne in mind that *Williams* antedated much of the evolving jurisprudence concerning the con-

---

8. We emphasize the narrowness of our holding, which is limited to the one situation where, in sentencing, the district court judge is of the opinion that the defendant lied while testifying. We express no opinion as to any other considerations that may be relevant to, and appropriate in, sentencing.

1. 517 F.2d 393 (3d Cir. 1975).

2. Cf. *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1970); *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *United States ex rel. Macon v. Yeager,* 476 F.2d 613 (3d Cir. 1973).

3. 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

4. 470 F.2d 1140 (3d Cir. 1972), *cert. denied,* 411 U.S. 919, 93 S.Ct. 1558, 36 L.Ed.2d 311 (1973).

stitutional rights of the accused. Given this fact, I believe that we should be cautious about construing *Williams* in an expansive manner so as to govern the quite different problems presented in this case.

In suggesting that the sentencing practice employed by the trial court is possibly constitutionally flawed, I acknowledge that a clear majority of courts of appeals have approved such sentence augmentation.[5] Unlike Judge Rosenn, however, I do not believe that these citations can be considered to be conclusive of the constitutional issues. First, some of these cases are factually distinguishable from the one at bar. More important, however, is the fact that the bulk of the opinions that sanction the practice simply do not address the constitutional considerations. And those which do advert to the existence of possible constitutional difficulties are devoid of systematic analysis of the constitutional problems.[6] In particular, I would note that Judge Frankel's opinion in *United States v. Hendrix*,[7] upon which Judge Rosenn placed much reliance, does not deal with constitutional concerns.

The constitutional issues that we leave unresolved in this matter are, in my judgment, important ones that merit serious scrutiny. Hopefully, at the proper time, and in the proper case, they will receive definitive treatment.

ROSENN, Circuit Judge, dissenting.

I respectfully dissent. The convicted criminal usually regards the preparation of his defense and the ordeal of trial as unfortunate incidents of having been apprehended for the crime. Even after a jury has returned a verdict of guilty, the moment of truth for him often comes only when the sentence and judgment are im-

posed by the trial judge. The sentencing may also mark the commencement of the defendant's rehabilitation. The allocution of the judge at the time of sentencing, therefore, may be a critical point in providing the defendant with a realistic perspective and an opportunity, grim though it might be, to see himself as others see him. A candid articulation of the considerations which enter into the sentencing process should therefore be encouraged and should not be limited by the formal evidentiary constraints of the trial contest. Judge Garth, however, believes that in this case the judge violated the principle of *Poteet v. Fauver,* 517 F.2d 393 (3d Cir. 1975), when he considered as a sentencing factor the "complete fabrication" of the defense. Judge Adams believes that regardless of *Poteet,* the trial judge may have invaded the defendant's constitutional rights by augmenting the sentence on the substantive charge in the belief that the defendant lied while testifying. I am constrained to disagree with both propositions.

First, I do not believe that *Poteet v. Fauver, supra,* is applicable to the facts of this case. *Poteet* involved an effort by a state trial judge at sentencing to coerce a confession from the defendant under the threat of imposing a longer sentence. A close reading of the case shows that it was for that reason this court was critical of the sentencing judge. The sentencing judge emphasized that he was not concerned with Poteet's false testimony on the stand but with Poteet's refusal to confess *after* the jury had rendered its verdict against him:

> It is one thing what you do before the jury. When you come here for sentence, . . . *that's the time for you to come clean,* if there's any hope of your ever coming clean. [Emphasis supplied.]

. *See United States v. Nunn,* 525 F.2d 958 (5th Cir. 1976); *United States v. Hendrix,* 505 F.2d 1233 (2d Cir. 1974); *Hess v. United States,* 496 F.2d 936 (8th Cir. 1974); *United States v. Moore,* 484 F.2d 1284 (4th Cir. 1973); *United States v. Cluchette,* 465 F.2d 749 (9th Cir. 1972); *United States v. Wallace,* 418 F.2d 876 (6th Cir. 1969); *Humes v. United States,* 186 F.2d 875 (10th Cir. 1959). *But see United*

*States v. Moore,* 484 F.2d 1284, 1288 (4th Cir. 1973) (Craven, J., concurring); *Scott v. United States,* 135 U.S.App.D.C. 377, 419 F.2d 264 (1969).

. *See, e. g., United States v. Wallace,* 418 F.2d 876 (6th Cir. 1969).

. 505 F.2d 1233 (2d Cir. 1974).

*Poteet, supra,* 517 F.2d at 395. The trial judge imposed a substantially lighter sentence on Poteet's equally mendacious co-defendant because he confessed his guilt when he appeared before the trial judge for sentencing. There is absolutely no indication that Poteet received a harsher sentence because he testified falsely. On the contrary, the evidence, including the lecture delivered to Poteet from the bench, discloses the judge's sole interest in extracting a confession of guilt from Poteet. Such an approach to the sentencing process "penalizes a defendant for preserving his right of appeal [and] it cannot be regarded as consistent with law . . . ." *Scott v. United States,* 135 U.S.App.D.C. 377, 419 F.2d 264, 282 (1969) (Leventhal, J., concurring). The sentencing judge in *Poteet,* as in *Scott,* would have effectively required the defendant to waive his Fifth Amendment rights. Although certain language in *Poteet* suggests that a sentencing judge may not add an increment to a sentence in the belief that the defendant lied under oath on the witness stand, no such situation was presented in *Poteet.* I must therefore conclude that it was the trial judge's disregard of Poteet's Fifth Amendment rights which animated this court in that case. The instant case, in contrast, presents no problem of coerced confession after trial and *Poteet* is therefore inapposite.

Judge Garth apparently recognizes that the focus of the trial court's concern in *Poteet* was the defendant's refusal after trial to admit his guilt, not his perjury during trial:

> In *Poteet,* the State trial judge was unsuccessful in his attempt to force Poteet to admit his guilt *after the verdict* and after a co-defendant had been forced to "confess."

Judge Garth's opinion at p. 105 (emphasis supplied). Nevertheless, Judge Garth cannot agree that the declaration in *Poteet* that "the sentencing judge may not add a penalty because he believes that the defendant lied" is mere dictum. Insofar as this language speaks to the problem of a defendant's lying on the witness stand, however, it is, by definition, only dictum,

since that problem was not presented in *Poteet.* I fear that Judge Garth overlooks the critical words of the *Poteet* holding on which he himself relies:

> Considering the totality of the sentencing judge's comments to Borowski and Poteet, we are not convinced that an increment of prison time was not added to Poteet's sentence because he persisted in maintaining his innocence *after the jury had returned a guilty verdict.* [Emphasis supplied.]

Judge Garth reads the words "after the jury had returned a guilty verdict" to mean "while the defendant testified under oath." Although Judge Garth feels constrained by our Internal Operating Procedures to conform his decision to that dictum, I do not believe that our procedures require any such adherence.

As the majority agree, "the factual setting [in *Poteet*] differs dramatically from that which confronted the district court judge in Grayson's case." The trial judge in the instant case made no attempt to coerce Grayson into confessing; he merely recognized that Grayson's ready willingness to lie under oath during the trial indicated that Grayson also had a rehabilitation problem. *Poteet* therefore is not controlling.

The issue before us is not an effort by the trial judge to sentence the defendant for an independent crime for which he was not tried or to augment the sentence on the substantive charge. The basic question, as I view it, is whether it is impermissible for a judge, in evaluating the sentence he is about to impose for the underlying offense, to consider as an element his firm belief that the defendant's testimony was a "complete fabrication." In passing on the mendacious character of the defendant, the judge is not imposing his sentence on an independent offense. Consideration of the characteristics of the defendant is pertinent since it offers the judge relevant information in the sentencing process.

Judge Adams believes that Judge Muir may have invaded the constitutional rights of the convicted defendant when he considered the defendant's fabrication of his

defense as a factor in the sentence. However, as I have already indicated, Judge Muir was unequivocal. He was not imposing any sentence for any independent crime; he was merely considering the behavior and character of the defendant as he saw the defendant and heard the evidence during the trial in his imposition of sentence for the underlying crime.[1] Such consideration, when not abused, has been traditional in the courts and has been approved by Congress.

Congress has directed the utilization of presentence reports containing information about the defendants' "characteristics." Fed.R.Crim.Pro., Rule 32. Congress has also expressly authorized federal courts to "receive and consider for the purpose of imposing an appropriate sentence" information concerning the background, character, and conduct of the convicted person.[2] As Judge Garth notes, no limitation is imposed by the statute on the information to be considered by the sentencing judge. The basis for this enactment as indicated in the legislative history, [1970] U.S.Code Cong. and Admin.News, pp. 4007, 4040, is the decision in *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), where the sentencing judge imposed a death sentence in the face of the jury's recommendation of life imprisonment.

In stating his reasons for fixing the sentence of death, the sentencing judge in *Williams* relied upon information in the presentence report and proceeded under the New York policy which encourages a judge in the exercise of his discretion to consider information about the convicted person's past life, health, habits, conduct, and mental and moral propensities. In rejecting the defendant's challenge that this policy denied him due process because it permitted consideration of information from persons whom the defendant had not been permitted to confront or cross-examine, the Supreme Court distinguished rules of evidence "fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged" from information utilized in the sentencing process. The Court observed that historically courts in this country and in England have allowed a sentencing judge "wide discretion in the sources and types of evidence used by him in determining the kind and extent of punishment to be imposed . . . ." *Id.* at 247, 69 S.Ct. at 1083. The Court further noted that this approach has even greater relevance under "modern concepts individualizing punishment" and under the prevalent philosophy of penology "that the punishment should fit the offender and not merely the crime." *Id.* at 247, 67 S.Ct. at 1083.

In applying *Williams,* the Courts of Appeals of various circuits have time and again held that the sentencing judge is not limited to the consideration of facts proven during trial.[3] Consideration of prior criminal activity never passed on by a court has

---

1. Judge Muir stated during the allocution that he believed the prison sentence was indicated because (1) it would deter the defendant and "others similarly situated," and (2) it was his view that the defense was a "complete fabrication without the slightest merit whatsoever." It seems to me that these were not improper considerations in weighing whether the sentence for the underlying offense should or should not require imprisonment for the escape. They involve deterrence, the state's interest in discouraging falsity at trials, and a lesson in rehabilitation for the defendant. In imposing the sentence, Judge Muir carefully adhered to the admonition of the Advisory Committee on the Criminal Trial as stated in section 1.8. He did not impose "any sentence in excess of that which would be justified by any rehabilitative, protective deterrent, or oth-

er purposes of the criminal law because the defendant elected" to go to trial.

2. 18 U.S.C. § 3577 (1970) provides:
   No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

3. *See, e. g., United States v. Haygood,* 502 F.2d 166 (7th Cir. 1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 812 (1975); *United States v. Gorden,* 495 F.2d 308 (7th Cir.), *cert. denied,* 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974); *United States v. Allen,* 494 F.2d 1216 (3d Cir.), *cert. denied,* 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 83 (1974); *United States v. Onesti,*

been expressly upheld by various circuits, sometimes against direct constitutional attack.[4] This Circuit, of course, has given its express and wholehearted approval to consideration by a sentencing judge of pending indictments against the defendant. *United States v. Metz, Appeal of Davenport*, 470 F.2d 1140 (3d Cir. 1972), *cert. denied*, 411 U.S. 919, 93 S.Ct. 1558, 36 L.Ed.2d 311 (1973). As Judge Biggs wrote,

> The fact that other criminal activity has not been passed on by a court should not be controlling, for "of necessity, much information garnered by the probation officer will be hearsay and will doubtless be discounted accordingly, *but the very object of the process is scope.*"

*Id.* at 1142, quoting from Judge Friendly's opinion in *Doyle, supra.* [Emphasis supplied by Judge Biggs.]

If under *Williams, supra,* and the legion of cases which have followed it, hearsay evidence as to prior arrests, pending indictments, or indictments tried but not resulting in convictions, may be considered constitutionally in the selection of an appropriate sentence, it seems to me there is even greater justification for the judge to consider the attitude and conduct of the defendant during trial. In the instant case, the judge personally observed the witnesses and the demeanor of the defendant; he was impressed by the "complete fabrication" of the defense and its utter lack of merit. His observation specifically goes to the sort of person the defendant is; it is precise, is pertinent to the sentence the defendant should receive, and to the desirable objective of making the punishment fit the offender.[5]

The trial judge's weighing of the mendacious behavior of the defendant in the courtroom during trial is an appropriate exercise of his broad range of discretion on sentencing. It may be that the conduct described also amounts to perjury, but it seems to me to be less subject to due process attack than consideration of obvious hearsay in presentence reports. The constitutional question which Judge Adams raises was addressed and rejected in *United States v. Hendrix*, 505 F.2d 1233 (2d Cir. 1974), *cert. denied*, 423 U.S. 897, 96 S.Ct. 199, 46 L.Ed.2d 130 (1975),[6] in these words:

411 F.2d 783 (7th Cir.), *cert. denied*, 396 U.S. 904, 90 S.Ct. 217, 24 L.Ed.2d 179 (1969).

4. *See, e. g., Horowitz v. Henderson,* 514 F.2d 740 (5th Cir. 1975); *Houle v. United States*, 493 F.2d 915 (5th Cir. 1974) (per curiam); *United States v. Cifarelli*, 401 F.2d 512 (2d Cir.) (per curiam), *cert. denied*, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 448 (1968); *United States v. Weston*, 448 F.2d 626 (9th Cir. 1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972); *United States v. Malcolm*, 432 F.2d 809 (2d Cir. 1970); *United States v. Doyle*, 348 F.2d 715 (2d Cir.) (Friendly, J.), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965). The scope of the sentencing judge's review has also been held to include criminal activity by the defendant subsequent to the trial of the crime for which he is being sentenced, *United States v. Eberhardt*, 417 F.2d 1009 (4th Cir. 1969), *cert. denied sub nom. Berrigan v. United States*, 397 U.S. 909, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970), facts underlying a separate charge then pending against the defendant, *United States v. Johnson*, 507 F.2d 826 (7th Cir. 1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975), and evidence admitted on counts of which the defendant was acquitted, *United States v. Sweig*, 454 F.2d 181 (2d Cir. 1972). The sentencing judge bears the responsibility for imposing a fair sentence which will serve the ends of punishment, deterrence, and rehabilitation, and the more he knows about the defendant's character the better. *See United States v. Marcello*, 423 F.2d 993 (5th Cir. 1970), *cert. denied*, 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970). Thus, the sentencing judge may even rely on illegally seized evidence which would have been excluded at trial because of Fourth Amendment violations, *United States v. Schipani*, 435 F.2d 26 (2d Cir. 1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971). *Cf. Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1969). Hearsay information may be considered also, even though it bears no relation to the crime for which the defendant is being sentenced. *Gregg v. United States*, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969).

5. *Cf. United States v. Biscoe*, 518 F.2d 95 (1st Cir. 1975), holding that it was proper for the trial judge to interpret the defendant's extensive dramatic display of gestures and facial expressions during the trial as evidence that he had not repented and to sentence accordingly.

6. The opinion was authored by Judge Marvin Frankel of the Southern District of New York sitting by designation. Judge Frankel is a rec-

The appellant urges in substance that to punish him by an enhanced sentence for perjury amounts to a kind of conviction for another crime without the safeguards of indictment and trial. But this ignores the nature of the sentencing process as it exists in our system and of the factors the trial judge may consider in exercising a frequently enormous range of discretion. If there is no clear consensus on these factors, it is certainly clear that they include, as aggravating circumstances, conduct that is not literally "criminal," or at least had not been duly adjudged criminal in the case in which sentence is being imposed.

\*     \*     \*     \*     \*     \*

The effort to appraise "character" is, to be sure, a parlous one, and not necessarily an enterprise for which judges are notably equipped by prior training. Yet it is in our existing scheme of sentencing one clue to the rational exercise of discretion. If the notion of "repentance" is out of fashion today, the fact remains that a manipulative defiance of the law is not a cheerful datum for the prognosis a sentencing judge undertakes. [Citation] Impressions about the individual being sentenced—the likelihood that he will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, the degree to which he does or does not deem himself at war with his society—are, for better or worse, central factors to be appraised under our theory of "individualized" sentencing. The theory has its critics. While it lasts, however, a fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia.

Even in cases where defendant's mendacity has not risen to the level which moved Judge Muir in this case, all circuits except one [7] have rejected the contention that a judge in imposing sentence cannot properly consider the defendant's willingness to lie under oath.[8] In addition to *Hendrix, supra,* constitutional arguments were reviewed in *Hess v. United States,* 496 F.2d 936 (8th Cir. 1974), and were explicitly raised by Judge Craven's concurring opinion in *United States v. Moore,* 484 F.2d 1284 (4th Cir. 1973), and implicitly rejected by the majority. Thus, the weight of decisional and statutory authority favors consideration by a

ognized authority on sentencing. *See* M. Frankel, *Criminal Sentences; Law Without Order* (1973).

7. *Compare United States v. Hendrix,* 505 F.2d 1233 (2d Cir. 1974), *cert. denied,* 423 U.S. 897, 96 S.Ct. 199, 46 L.Ed.2d 130 (1975); *United States v. Moore,* 484 F.2d 1284 (4th Cir. 1973); *United States v. Nunn,* 525 F.2d 958 (5th Cir. 1976), *rehearing denied,* 527 F.2d 1390 (5th Cir. 1976); *United States v. Wallace,* 418 F.2d 876 (6th Cir. 1969), *cert. denied,* 397 U.S. 955, 90 S.Ct. 987, 25 L.Ed.2d 140 (1970); *Hess v. United States,* 496 F.2d 936 (8th Cir. 1974); *United States v. Cluchette,* 465 F.2d 749 (9th Cir. 1972); *Humes v. United States,* 186 F.2d 875 (10th Cir. 1951), *with Scott v. United States,* 135 U.S.App.D.C. 377, 419 F.2d 264 (1969).

8. I also fear that a rule barring a sentencing judge from considering a defendant's obvious willingness to lie under oath will have a pernicious effect. A sentencing judge cannot help but be influenced by his conviction that the offender deliberately and flagrantly lied under oath during the trial. The majority's rule may have the effect of replacing the type of commendably frank and instructive explanation which Judge Muir delivered to the defendant in this case with an unconscious, unexpressed reliance on the very same factor. If the sentencing judge withholds his thoughts, any sentence within legal limits will withstand attack. A wooden and mechanical announcement of the sentence will replace an intelligent articulation of reasons. Judge Frankel succinctly stated the need for such articulation:

> The absence of any explanation or purported justification for the sentence is among the more familiar and understandable sources of bitterness among people in prison. Philosophers have agreed for ages on the ideal that the person suffering punishment should be guided to understand and, in the ultimate hope, realize the justice of the affliction. Our practice of terse dispositions is at the opposite pole.

M. Frankel, *supra* note 5, at 42–43. *See also Gollaher v. United States,* 419 F.2d 520, 530 (9th Cir. 1969), *cert. denied,* 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1964).

sentencing judge of a wide variety of information which might serve to illuminate the character of the person being sentenced— hearsay evidence of past crimes, character evidence gathered in the presentence report, the allocution by the defendant at the time of sentencing, and the judge's impression of the defendant's character.

In selecting an appropriate sentence, of course, the judge should scrutinize the probative value of the evidence he considers and discount evidence which may be dubious. The exclusion from the scope of the judge's inquiry of visible and clear conduct of the defendant in the presence of the judge during trial needlessly limits the judicial process in dispensing justice and adds little to the due process interests of the defendant.

Judge Adams does not find the decisions of our sister circuits to be conclusive and I recognize, of course, that they do not bind us. We are bound, however, by the Supreme Court's decision in *Williams* and, as a panel, by our own prior decision in *Metz, supra.* Although Judge Adams suggests that *Williams* and its progeny can be distinguished from this case, I can see no meaningful distinction. I believe the principles of *Williams* and *Metz* are controlling.

Even if *Williams* and *Metz* were not controlling, I would still believe that Judge Muir's consideration of the defendant's behavior was not impermissible. I am not suggesting that a judge who sentences a defendant for an underlying offense should indiscriminately impose some increment because the defendant has testified falsely. Judges rarely take such action, recognizing that men on trial may lie under stress and instinctively protect their innocence. But when a judge is outraged by a blatantly fabricated defense committed in his presence and of which he has no reasonable doubt, I do not see any constitutional impermissibility in his considering such conduct in sentencing. I agree with the Second Circuit in *Hendrix, supra,* 505 F.2d at 1236, that the sentencing judge should consider his independent evaluation of the testimony and behavior of the defendant only when he is convinced beyond a reasonable doubt that the defendant intentionally lied on material issues of fact. The requirement that the judge be convinced beyond a reasonable doubt offers the defendant a valuable safeguard.

As an additional safeguard to the defendant, I would require that the falsity of the defendant's testimony be necessarily established by the finding of guilt. There must be no possibility that the substantive law applied was such that the factfinder could have believed the defendant's testimony at the same time as it found him guilty. If, for example, a person charged with burglary testifies that he burglarized out of hunger, the substantive criminal law is such that the factfinder could find the defendant guilty even as it finds his testimony wholly truthful. On the other hand, when a defendant testifies to an alibi, a finding of guilt would necessarily rest on a finding that his testimony was false. This additional safeguard thus minimizes the possibility of abuse. A review of the record in this case reveals that Judge Muir applied both these safeguards.

Accordingly, I would affirm the judgment of the sentencing court.