**UNITED STATES**

v.

**John Robin YOUNG, 244 04 1776, Airman Recruit (E–1), U. S. Navy.**

**NCM 78 0377.**

U. S. Navy Court of Military Review.

Sentence Adjudged 15 June 1977.

Decided 10 Aug. 1978.

LT Philip G. Cohen, JAGC, USNR, Appellate Defense Counsel.

LCDR Paul B. Thompson, JAGC, USN, Appellate Government Counsel.

Before NEWTON, GLADIS and GRANGER, JJ.

GRANGER, Judge:

Contrary to his pleas, appellant was convicted by special court-martial, judge alone, of possession of marijuana and phencyclidine. His sentence, as approved below, includes confinement at hard labor for 79 days, forfeiture of $250 pay per month for 3 months, and separation with a bad-conduct discharge.

■ Appellant readily stipulated that the illicit drugs were discovered in his field jacket pockets and were seized by law enforcement agents during a lawful search of his room in a military barracks. He contended, however, that he had no knowledge that the drugs were in his pockets and that the contraband belonged to his roommate, Alan. He testified that Alan frequently wore appellant's jacket and had admitted to appellant shortly after the seizure that the drugs were his (Alan's). Appellant's testimony was supported by that of three close acquaintances, who testified that they were present the day after the seizure when Alan made this admission and vowed that appellant would not have to "take the rap" for these offenses. Alan did not testify, as he had been discharged prior to trial and could not be located.

It was shown that appellant and his three witnesses, as well as Alan, saw each other practically every day, spending much of their leisure time together; that Alan's imminent discharge was a matter of common knowledge; and that none of the witnesses apprised anyone in authority, or even appellant's defense counsel, of Alan's alleged complicity until after Alan's separation from the service.

Other evidence presented by the Government in rebuttal showed that appellant was twice seen wearing the jacket within 2 hours before the seizure of the contraband, and that the search of the jacket also produced a pipe and a pair of needle-nosed pliers. A water pipe and cigarette papers were seized from appellant's locker. Appellant denied knowledge that the pipe and pliers were in his jacket, and did not remember them being taken from the jacket during the search. Although appellant admitted wearing the jacket shortly before his apprehension, he denied feeling the presence in the jacket pockets of the contraband, the pliers, or the pipe. He testified that the water pipe was for decorative purposes and that he had never used it. As to the cigarette papers, appellant explained that he was unaware that any were in his locker; that it was a hobby of his to save the covers from packages of cigarette papers and that he generally threw the papers away or gave them away, retaining only the cover for his collection.

We find appellant's testimony incredible. From the evidence presented, it justifiably may be inferred that appellant knew the marijuana and phencyclidine were in his jacket. Applying the rules set out in *United States v. Aloyian,* 16 U.S.C.M.A. 333, 36 C.M.R. 489 (1966), we find beyond a reasonable doubt that appellant possessed the marijuana and the drug as alleged, and we reject appellant's assignment of error to the contrary.

The military judge, prior to sentencing appellant, stated:

[T]he sentence that I am awarding you today is based solely on the offenses for which you have been convicted, although the court cannot help [sic] take into consideration your demeanor and appearance here today and your own testimony.

Appellant argues that this discourse reflects that the judge's sentence was based in part upon his belief that appellant committed perjury at trial, and that to punish appellant for perjury when he has not been charged with that offense is a violation of due process and also infringes upon appellant's right to testify in his own behalf.

To support his argument, appellant relies upon *United States v. Grayson,* 550 F.2d 103 (3d Cir. 1976) and an earlier case of the same court. Subsequent to submission of

his brief, *Grayson* was reversed. *United States v. Grayson,* —— U.S. ——, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). The Supreme Court rejected both of appellant's arguments. Tracing the evolution of sentencing, the High Court concluded that the prevalent modern philosophy of penology is that the punishment should fit the offender and not merely the crime, and that an accused's truthfulness or mendacity while testifying is probative of his attitude toward society and prospect for rehabilitation, and hence relevant to sentencing. *Id.* at ——, 98 S.Ct. 2610. To hold otherwise would impede rational, individualized sentencing. "The 'parlous' effort to appraise 'character,' . . . degenerates into a game of chance to the extent that a sentencing judge is deprived of relevant information concerning 'every aspect of a defendant's life.' . . . The Government's interest, as well as the offender's, in avoiding irrationality is of the highest order." *Id.* at ——, 98 S.Ct. at 2617.

▮ The Supreme Court thus concluded that it is permissible for a federal judge to consider as a sentencing factor the veracity of a defendant who testifies at his trial. It does not necessarily follow that this practice is permissible in courts-martial, of course, but we find no reason to reach a different result. The military justice system, as well as the federal criminal justice system, strives to individualize its sentences. *See United States v. Varacalle,* 4 M.J. 181 (C.M.A.1978). In determining an appropriate sentence, it is proper for the court to consider "all the matters peculiar to" the particular accused; *Id.* at 183. Whether the maximum or a lesser sentence will be imposed should be determined after a consideration of *all the facts and circumstances* involved in the case. Paragraph 76 *a*(2), *Manual for Courts-Martial, United States, 1969* (Revised edition). When a military judge is deprived of relevant information concerning an accused's prospects for rehabilitation, sentencing in courts-martial degenerates into the same game of chance referred to in *Grayson.* We therefore follow the holding of the Supreme Court in *United States v. Grayson, supra,* and con-

clude that consideration of such factors is permissible in courts-martial sentencing.

▮ We find no indication in the record that the military judge increased the punishment because he believed appellant committed perjury. Rather, it appears that the court arrived at its sentence by considering appellant's demeanor and testimony, along with all the other evidence and circumstances of the case, the better to evaluate appellant's prospects for rehabilitation and restoration to a useful place in society. In doing so, the judge committed no error.

Appellant was sentenced on 15 June 1977. On 7 July, he submitted to the convening authority a written request for a polygraph examination. According to trial defense counsel, the convening authority "verbally approved the request and directed the Detailed Defense Counsel to make necessary arrangements with Naval Investigative Service." The Naval Investigative Service advised counsel that they would not be able to conduct the test. The convening authority took his action on 12 August.

Appellant contends that "Government agents" abused their discretion in denying appellant the opportunity to be examined by polygraph, and urges that we set aside the action of reviewing authorities below and return the record in order that a polygraph examination may be administered.

▮ We are cited to no authority, and we find none, that gives appellant the right to a post-trial polygraph test. As was stated in *United States v. Martin,* 9 U.S.C.M.A. 84, 86, 25 C.M.R. 346, 348 (1958), "An accused is entitled to his day *in* court, but not to a day *in and out* of court." We take judicial notice of SECNAVINST 5520.4, Subj: The conduct of polygraph examinations and the selection, training, and supervision of DOD polygraph examiners. It is clear from that regulation that appellant's convening authority had no authority to order the administration of a polygraph test. He had only the authority to submit a request for such examination to the nearest testing agency. That request must be in writing. It would appear from the record that de-

fense counsel made nothing more than pre-
liminary overtures toward gaining autho-
rization for a polygraph test. He did not
make the "necessary arrangements," *i. e.,*
prepare a formal written request for com-
mand signature; nor does it appear that he
elicited the convening authority's assistance
in persuading those in a position of authori-
ty to grant the request. Defense counsel's
failure to vigorously pursue exculpatory
polygraph testing of his client is perhaps
explained in a clemency request dated 15
August, in which he advised the convening
authority that, during his two months con-
finement, appellant had "developed an atti-
tude of remorse for his offenses. . . ."
In any case, the convening authority chose
to take his action without seeking addition-
al information outside the record, as he was
entitled to do, and we perceive no error.

We find no merit to appellant's
remaining assignments of error. Appel-
lant's stipulation of fact, to the effect that
the drugs and marijuana were found in his
jacket, did not amount to a confession. The
stipulation was merely a trial tactic to clari-
fy the issues and narrow them to the only
one the defense considered worthy of liti-
gating. The military judge acted properly
in accepting the stipulation. *United States
v. Long,* 3 M.J. 400 (C.M.A.1977). After
appellant testified he did not know marijua-
na was in his pocket, it was not error for
the Government to inquire why appellant
had a water pipe and cigarette papers in his
locker. The record of nonjudicial punish-
ment was not rendered inadmissible by
*United States v. Booker,* 5 M.J. 238 (C.M.A.
1977). *United States v. Cannon,* 5 M.J. 198
(C.M.A.1978); *United States v. Harrell,* 5
M.J. 604 (N.C.M.R.1978) (*en banc*). We
consider the sentence to be appropriate.

The findings and sentence as approved
below are affirmed.

Senior Judge NEWTON and Judge
GLADIS concur.