**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gregory Wayne CLUCHETTE,**
**Defendant-Appellant.**

**No. 72-1312.**

United States Court of Appeals,
Ninth Circuit.

Aug. 8, 1972.

Martin Levine (argued), John K. Van de Kamp, Los Angeles, Cal., for defendant-appellant.

Stanley I. Greenberg, Asst. U. S. Atty. (argued), Eric A. Nobles, Asst. U. S. Atty., William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before MERRILL and KILKENNY, Circuit Judges, and TAYLOR, District Judge.*

KILKENNY, Circuit Judge:

Cluchette appeals his jury conviction on two counts of violating 18 U.S.C. § 472 [possession of counterfeit bills with intent to defraud]. Count One charging a violation of 18 U.S.C. § 473 [attempt to transfer $300.00 in counterfeit money] was dismissed. We affirm.

## FACTUAL BACKGROUND

Considered in the light most favorable to the appellee, the evidence may be

---

* The Honorable Fred M. Taylor, Senior Judge for the United States District Court, District of Idaho, sitting by designation.

summarized as follows: On July 19, 1971, as Jon Clark was opening his tavern, appellant approached Clark and offered to sell him counterfeit money. After a brief conversation, in which appellant suggested that Clark could pass the money more easily than some of appellant's other customers on account of the green lights in the tavern, they agreed that appellant would return at about 5:00 P.M. the same afternoon, as Clark did not then have the purchase price of the counterfeit bills. Upon appellant's departure, Clark called the Los Angeles office of the United States Secret Service. Special Agents Marchitello and Carlon were dispatched to the tavern and met with Clark at approximately 3:30 P.M. Clark agreed to introduce Marchitello to appellant as a service station operator interested in handling counterfeit money. Carlon was to remain inside the tavern and cover Marchitello. Two other agents were stationed outside the tavern.

Appellant returned about 5:00 P.M. and after a brief conversation with Clark, appellant, Clark and Marchitello entered a back room of the tavern. Appellant and Marchitello then had a brief conversation, at which time the agent indicated that he was interested in purchasing counterfeit money and appellant stated that he could get as much as needed, although he had no samples with him. Agent Marchitello, observing that appellant was somewhat nervous, indicated that he would wait at the bar for the counterfeit money and left the back room. Appellant stopped Clark as he turned to leave with Marchitello, and stated he had with him the counterfeit money, but was somewhat suspicious of Marchitello. He then said that he had the counterfeit money in the car and would get it. Clark returned to his normal duties behind the bar, while agents Carlon and Marchitello kept the tavern under surveillance. Within minutes appellant returned, went to the back room with Clark and removed from his pocket a roll of counterfeit money. At this time, he counted out fifteen twenty-dollar bills, which he handed to Clark and returned the rest to his pocket. Clark then said he had to get the payment money from the cash register. When Clark left the back room with the counterfeit money, he gave it to Marchitello. After a brief conversation, agents Carlon and Marchitello decided to arrest appellant. Clark and Marchitello entered the back room, at which time Clark drew a gun which he carried for the protection of his tavern. Carlon entered the room a few moments later and appellant was then placed under arrest and searched for weapons.

After appellant was fully advised as to his constitutional rights and waived them, he told the agents and Clark of many attempted sales of counterfeit money, the name of his source and offered to show the agents where the source resided. During this period, he asked if he could be released on bail and was told by the agents that they had no control over bail, but could only recommend it. He was then taken to the Los Angeles office of the Secret Service and later accompanied the agents to a location where he pointed out the apartment where his source resided.

Upon return to the Secret Service office, appellant was again advised of his constitutional rights and again waived them. Appellant then asked to see a supervisor. In the conversation with the supervisor, appellant wanted to know what the Secret Service could do for him, if he would cooperate. When asked where he got the $300.00 in counterfeit money, he explained that in reality he had obtained $500.00 and then handed the supervisor an additional $200.00 which he took from his pocket. At this time, in the presence of Carlon and other agents, appellant corroborated all of the events of the day up to that point and repeatedly mentioned his prior dealings in counterfeit money. Subsequently, Carlon's notes of the events of the day were transcribed and appellant approved them with the exception of a statement about his automobile.

Since we are bound to take the evidence in the light most favorable to the

appellee, we need not here discuss the appellant's version of what occurred, other than to say that neither the judge nor the jury believed it.

## SEQUENCE OF EVENTS

Appellant was arrested at approximately 5:30 P.M. He arrived at the Los Angeles office of the Secret Service at between 6:15 and 6:30 P.M. After being fingerprinted, photographed, otherwise processed and again interviewed, he proceeded with the agents to the apartment of his supplier at approximately 7:00 P.M. and was ultimately lodged in the county jail for the night at approximately 8:00 P.M. The following morning, at approximately 9:20 A.M., an agent arrived for the purpose of taking appellant before a Magistrate, but due to a clerical error in spelling of appellant's name, did not find him until 11:20 A.M. Shortly thereafter, the agent went to the United States Attorney to obtain a Complaint to file with the Magistrate. After obtaining the Complaint, he called the Magistrate and arranged for a 2:00 P.M. meeting, following lunch. Appellant was taken to Magistrate Court at approximately 1:45 P.M. The proceedings before the Magistrate were terminated at 2:55 P.M. The record reveals that no effort was made to take appellant before a Magistrate the night of the arrest for the reason that the agents were unaware of the availability of either a Magistrate, an Assistant United States Attorney or a United States Marshal after 5:00 P.M. in any case other than an emergency. A Magistrate testified that although provision had been made for arraignments after 5:00 P.M., such arraignments had not been widely publicized and that a new procedure had been instituted subsequent to the date of appellant's arrest.

## ISSUES

(1) Sufficiency of the Indictment.

(2) Sufficiency of the Instructions.

(3) Error on Motion to Suppress.

(4) Abuse of discretion in Sentencing.

(5) Failure to exclude witnesses from the courtroom during motion to suppress.

## SUFFICIENCY OF INDICTMENT

▮ (1) Each of the two counts on which appellant was convicted charges him with a violation of 18 U.S.C. § 472 [1] by having in his possession and custody, with intent to defraud, stated amounts of counterfeit Federal Reserve Notes. Appellant argues that the charging part of the indictment used the language ". . . had in his possession and custody . . .", rather than the language ". . . keeps [kept] in possession . . ." as used in the statute. Consequently, he says, the indictment is fatally defective.

▮ At the outset, appellant is faced with his failure to challenge the sufficiency of the indictment until after trial. The contention was first made after verdict in his motion in arrest of judgment. While this fact alone does not preclude us from considering the indictment's sufficiency, Carlson v. United States, 296 F.2d 909 (CA9 1961), it does invite us to apply a different standard. After trial, the indictment is sufficient if the necessary facts appear in any form or by fair construction can be found within its language. Hagner v. United States, 285 U.S. 427, 433, 52 S. Ct. 417, 76 L.Ed. 861 (1932); Kaneshiro v. United States, 445 F.2d 1266, 1269 (CA9 1971), cert. denied 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543; Ramirez v. United States, 318 F.2d 155, 157

---

1. "18 U.S.C. § 472. *Uttering counterfeit obligations or securities.*

Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both. June 25, 1948, c. 645, 62 Stat. 705."

(CA9 1963). The true test is whether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. United States v. Mitman, 459 F.2d 451 (CA9 1972). The crime need not be charged in the precise language of the statute. Hagner v. United States, *supra*. A case closely in point is United States v. Johnson, 371 F.2d 800, 805 (CA3 1967).

Moreover, we believe that appellant's argument is hypercritical. Since the jury necessarily found that appellant *had* the counterfeit money in his possession at and before his arrest, it necessarily follows that he then *kept* the contraband in his possession.

There is nothing whatsoever in the record which would indicate that appellant was in any way prejudiced by the failure of the indictment to use the statutory language. Appellant's challenge to the adequacy of each count in the indictment must fail.

### REQUESTED INSTRUCTIONS

■■■ (2) Appellant's argument on the sufficiency of the instructions is closely related to his argument on the sufficiency of the indictment. One of appellant's requested instructions asked the court to instruct the jury, among other things, that an element of the crime was that " . . . the defendant kept in possession *or concealed* . . . " the counterfeit bills. The court instructed the jury that one of the two essential elements of the crime was "That the defendant possessed and had in his custody counterfeited Federal Reserve Notes, as charged." Immediately prior to giving this instruction, the court read to the jury the relevant parts of the statute, including the language " . . . keeps in possession . . . ". While it would have been appropriate for the court to employ the language of the statute in outlining the essential elements of the crime, and that is probably the more acceptable method, the fact remains that a judge is under no legal obligation to do so. As previously mentioned, there is no significant difference between the language used by the court and the language of the statute. United States v. Johnson, *supra*. Additionally, appellant was not charged with *concealment* of the counterfeit notes. If the judge had given appellant's requested instruction, he would have injected into the case a crime which was not charged in the indictment. Manifestly, the court was not required to give the instruction as requested.

Finally, the evidence of appellant's possession of the contraband for a considerable period of time is so overwhelming that his attempted distinction on the record between the phrases: "possessed and had in his custody" and "keeps in possession" approaches, if it does not reach, the ludicrous.

■■■ We have considered appellant's argument on the sufficiency of the court's instructions on intent to defraud. In our view the instructions [2] were sufficient and fully apprised the jury of the intent necessary in order to convict. A showing that the bills were offered for sale for less than face value is substantial evidence of knowledge of their counterfeit character. United States v. Seay, 432 F.2d 395 (CA5 1970), cert. denied sub nom. McGee v. United States,

---

2. *  *  *  *  *

"Now, what do we mean by 'intent to defraud'? To act with 'intent to defraud' means to act wilfully and with the specific intent to deceive or cheat, ordinarily for the purpose of either causing some financial loss to another or bringing about some financial gain to oneself."

*  *  *  *  *

"One may be said, ladies and gentlemen, to have an intent to defraud if he has knowing possession of counterfeit money with the intent to sell it or pass it on to another person to whom he describes it as counterfeit money, so long as he intends that eventually it will reach circulation as purported genuine money." [R.T., pp. 675–676].

*  *  *  *  *

401 U.S. 942, 91 S.Ct. 949, 28 L.Ed.2d 223 (1971).

## MOTION TO SUPPRESS ADMISSIONS

(3) Several questions are raised by appellant in connection with the admission of statements he made to the Secret Service agents.

■■■■ First he points to elapsed time between his arrest and his arraignment, during which time the statements were made. He then argues that the agents' statements with reference to bail had a coercive effect in securing his admissions. Appellant's testimony with reference to the alleged coercive statements is illusory at best and, for the most part, indefinite and uncertain. Beyond that, his testimony on this issue is denied, in all significant areas, by the agents and Clark. Even conceding that Clark might appear to be an over-zealous witness, the record provides ample evidence supporting the finding of the trial court that the admissions were voluntary. In the absence of clear error, his findings must stand. Moser v. United States, 381 F.2d 363 (CA9 1967), cert. denied 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 850 (1968); Ortiz v. United States, 318 F.2d 450, 452 (CA9 1963). Our United States v. Glasgow, 451 F.2d 557 (CA9 1971) is closely in point and holds that statements by officers to persons in custody, similar to those appearing in the record before us, are not coercive. The same is true of United States v. Frazier, 434 F.2d 994 (CA5 1970). It is the law of this circuit that the requirements of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) and McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L. Ed. 819 (1943), are waived, in a case such as here, where a person in custody waives his *Miranda* rights. United States v. Lopez, 450 F.2d 169 (CA9 1971); United States v. Halbert, 436 F. 2d 1226 (CA9 1970). It is now settled

that the standard to be employed by the judge in deciding the issue of voluntariness is that of a preponderance of the evidence, rather than evidence beyond a reasonable doubt. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). Here there is no claim that the judge did not fully employ the criteria required by 18 U.S.C. § 3501(a) and (b), nor is there any real contention that appellant's admissions were made beyond the six hour limitation mentioned in § 3501(c). The reaffirmations of the admissions after the six hour period are of no significance. Even statements made after the six hour period are not automatically excluded. For an exhaustive analysis of this section of the Omnibus Crime Control and Safe Streets Act of 1968, see United States v. Halbert, *supra*.

■■■■ It is not our function to reweigh the evidence and pass on the credibility of the witnesses. Appellant took the witness stand. Suffice to say, the judge was not impressed with his version of what happened.

## SENTENCING

■■■■■ (4) During the course of sentencing, the judge expressed the view that appellant had been less than candid in his sworn testimony.[3] We find nothing offensive in the judge's comments. A sentencing judge cannot put out of his mind the impressions a defendant may give while on the witness stand and should not try to sentence in a mental vacuum. Here, there is no evidence that the sentencing judge was in any way biased or prejudiced. The imposition of an 18 month sentence on each count, to run concurrently, on convictions where he could have imposed a sentence of 15 years on each count forecloses any thought that the judge was unfair. In any event, we are not in the business of reviewing sentences and as a general rule will not disturb them as long as they fall within the bounds prescribed by statute. United States v. Ramirez-

3. "THE COURT: That is quite so. But from the history of the American judiciary, the beginning of it, courts have said, and judicial conferences have said, that they will not and cannot in sentencing ignore what they believe to be a lack of candor—I use charitable words—in sworn testimony during trial." [R.T., p. 725].

Aguilar, 455 F.2d 486 (CA9 1972); United States v. James, 443 F.2d 348 (CA9 1971).

## EXCLUSION OF WITNESSES

(5) Citing Charles v. United States, 215 F.2d 825, 827 (CA9 1954), appellant argues that the court, *sua sponte*, should have excluded the Secret Service agents and Clark from the courtroom during the hearing on the motion to suppress. *Charles*, under no stretch of the imagination can be read to support appellant's contention. There, defendant's motion to exclude the witnesses was denied and, on appeal, we held that in the circumstances there existing the judge abused his discretion in not allowing the motion. Here, there was no such motion, nor can we say that the failure to act *sua sponte* is plain error under the provisions of Rule 52(b), F.R.Crim.P.

We have studied appellant's other arguments under contentions one, two, three and four, and find them wanting in merit.

Finding no error, we affirm the judgment of the lower court.